UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 25- CR-000129-1 (SLS) |
| v. | : | |
| | : | |
| ASHAAD TURNER, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm), as the defendant, Ashaad Turner, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). While the defendant was on probation in Maryland for similar charges, he was stopped by the police in this case. And while was on pretrial release for this offense in Superior Court, the defendant committed an armed burglary for which he is currently on trial. The defendant is undeterred by supervision. There is no combination of conditions of release that can ensure the safety of the community if the defendant is released; he should be detained pending trial.

### BACKGROUND

*The Instant Offense*

On Sunday August 25, 2024, at approximately 5:30 p.m., Metropolitan Police Officers Mohammad Al-Khatib and Andrew Wolf were working the evening tour of duty in a marked Metropolitan Police Department ("MPD") cruiser, in full police uniform, operating within the Third District.

The officers were facing southbound while actively patrolling the intersection of 9th St.

and U St. Northwest, when they observed a dark blue BMW traveling westbound in the intersection with no front tags. The BMW had one rear Maryland hard tag. The officers were aware that all vehicles in Maryland must have a front and a rear tag affixed to the vehicle. Based on this information, the officers initiated a traffic stop in the parking area of a King gas station at 908 Florida Avenue Northwest.

The officers observed the defendant, Ashaad Turner, in the driver's seat and his co-defendant, Katherine Cuevas in the front passenger seat. Officer Wolf inquired if Turner had a valid driver's license; Turner said he has a license but did not have it with him. Turner provided Officer Wolf with the false name: Jaeqwon Turner.

Turner was then asked to step out of the vehicle while Officer Wolf sought to verify the information provided. While Officer Wolf was waiting for a criminal history and driver's license check on Turner, Officer Al-Khatib observed Turner approach the passenger side of the car, with his back facing Officer Al-Khatib, and place his left hand on the vehicle, raise his left leg and reach forward with his right hand; shown in *Figure 1*.



*Figure 1: Officer Al-Khatib's body worn camera video.*

While Turner was in this position, Officer Al-Khatib observed two small pink capsules fall out of Turner's clothing. Based on the officer's experience, the capsules that Turner dropped are used to store drugs. It was later determined that the capsules contained a white rock-like substance consistent with crack cocaine.

Mr. Turner was placed in handcuffs and Ms. Cuevas was asked to step out of the vehicle. As Cuevas stepped out of the vehicle, she swiped her left foot backwards and kicked one of the pink capsules that Turner dropped underneath the vehicle where it was later recovered by Officer Wolf.

Mr. Turner was placed under arrest for Possession of a Controlled Substance, and Ms. Cuevas was placed under arrest for Tampering with Evidence.

Officer Wolf later recovered a clear plastic bag containing thirty (30) round blue pills with "M 30" written on them, indicating the presence of suspected Oxycodone, in the same area where Turner stood after being placed in handcuffs.



*Figure 2: Officer Guo points out baggie containing suspected Oxycodone (circled in red) to Officer Wolf.*

3

A search incident to arrest yielded an additional pink capsule with white rock-like substance recovered from Mr. Turner's left sock. All pink capsules that were recovered subsequently field tested positive for cocaine base.

A clear plastic bag containing nine (9) grams of white rock-like substance was later recovered from Turner's groin area during a strip search at the station. The substance field tested positive for cocaine base.



*Figure 3: Photo of suspected cocaine collected from or discarded by Mr. Turner.*

A jar of plant-like substance was recovered from underneath the front passenger seat of Mr. Turner's vehicle. A clear plastic bag with a plant-like substance was recovered from a backpack that was on the seat of the vehicle. In total, the plant-like substance added up to 99.5 grams. A portion of the plant-like substance field tested positive for THC.



*Figure 4: Photo of suspected THC collected from Mr. Turner's vehicle.*

Additionally, one yellow capsule, one clear/orange baggie containing 65 clear zips, a black plastic bag containing 58 Mylar bags, and 85 clear plastic baggies were recovered from inside the vehicle.

After Ms. Cuevas was arrested, officers searched the purse she had slung over her shoulder and found a firearm, as shown in *Figure 3* below:



*Figure 5: Officer Wolf BWC of firearm inside Cuevas's purse and photo of the gun in Cuevas's purse at the station.*

The firearm is a black Sig Sauer P365 9mm pistol with serial number 66B402602. The firearm had one round in the chamber and 12 rounds in a 12 round capacity magazine. There are no firearms or ammunition manufacturers in Washington, D.C. Therefore, the firearm and

5

ammunition must have traveled across state lines.

The gun was swabbed for DNA; the DNA was analyzed by the FBI Laboratory and compared to known DNA samples from Ms. Cuevas and Mr. Turner.  The results provided "very strong support for inclusion" of both Cuevas and Turner in the samples collected from the firearm itself and the magazine.

A police records check determined that neither Turner nor Cuevas had a license to carry a pistol in the District of Columbia and that neither Turner nor Cuevas had a pistol registered in the District of Columbia. Neither Turner nor Cuevas claimed ownership of the recovered firearm. The firearm was reported stolen from Saint Mary's County, MD on April 24, 2024.

Mr. Turner's true name was determined via fingerprinting at the Third District station. A criminal records check revealed that Turner was previously convicted in the Superior Court of the District of Columbia, in case number 2020-CF3-007496, of Assault with a Dangerous Weapon and Carrying a Pistol without a License, which is punishable by imprisonment for a term exceeding one year. The docketed plea paperwork for that case, which Turner signed, notes that convictions of Assault with a Dangerous Weapon and Carrying a Pistol without a License both carry a potential maximum sentence of five years of imprisonment. Turner was also previously convicted in Prince George's County, Maryland for Illegal Possession of Firearm in Case No. C-16-CR-24-000092. In that case, he was sentenced to 5 years' incarceration with 9 months to serve and 5 years' probation. As such, at the time of this offense, Turner was aware that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year.

The government obtained warrants to search Turner's and Cuevas's phones. On Mr. Turner's phone, law enforcement located the below image that appears to have been taken on July 15, 2024 (*Figure 6, left*). The image shows a urine sample with Turner's name written on it next

to a firearm consistent with the firearm recovered in this case.



*Figure 6: The image taken on July 15, 2024, and stored on Turner's phone (left) compared to the firearm recovered by MPD officers on August 25, 2024 (right).*

## Procedural History

The defendant was arrested and charged with Possession with Intent to Distribute in Superior Court Case No. 2024-CF2-008512 for the August 25, 2024, incident. Only Ms. Cuevas was originally charged with possession of the firearm. A Superior Court magistrate judge released Mr. Turner following a preliminary hearing.

In December 2024, while on pretrial release, Mr. Turner committed an additional offense and was charged with Burglary, Assault with a Dangerous Weapon, and Possession of a Firearm During a Crime of Violence in D.C. Superior Court Case No. 2024-CF3-012893. A D.C. Superior Court magistrate judge found that there was no combination of conditions of release that could reasonably assure the safety of the community and the presence of the defendant in court and ordered him detained pending trial. The case is currently being tried in D.C. Superior Court before

7

Judge Robert Salerno.

After the government obtained DNA results and evidence from Mr. Turner's phone suggesting his possession of the firearm in the August 25, 2024, incident, the defendant was indicted in District Court on May 1, 2025, with one count of violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm). At an initial appearance on May 5, 2025, the government requested his detention under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm). His detention hearing is scheduled for May 23, 2025.

### *Defendant Turner's Criminal History*

Mr. Turner has repeatedly violated firearms laws, engaged in firearms-related violence, and flouted the terms of supervision while in the community. On December 23, 2020, the defendant pled guilty in D.C. Superior Court Case No. 2020-CF3-007496 to Assault with a Dangerous Weapon (Firearm) and Carrying a Pistol Without a License. Per the factual proffer that Mr. Turner accepted, on September 23, 2020, he approached the complainant and confronted him about an incident the previous day. When the complainant denied his involvement in the incident, the defendant and another individual began kicking and punching the complainant. The complainant fled. Mr. Turner chased after him, pulled out a firearm, and shot at the complainant. All of his shots missed. Mr. Turner was sentenced to 18 months' incarceration with 12 months suspended and 18 months' probation. He was released on April 2, 2021, and his probation terminated successfully in October 2022.

In December 2023, Mr. Turner was caught with another firearm in Prince George's County, Maryland. He was charged in Maryland Case No. C-16-CR-24-000092. He pled guilty to possessing the firearm in March 2024 and was sentenced to 5 years' incarceration with 9 months

to serve and 5 years' probation. According to the Pretrial Services Report, the defendant never reported to Maryland probation following his release.

In August 2024, Mr. Turner was arrested for the conduct at issue in the instant case and was charged with Possession with Intent to Distribute in D.C. Superior Court. He was released and returned to custody in Maryland from August 29, 2024, to October 16, 2024, for violating the terms of his probation in Case No. C-16-CR-24-000092.

In December 2024, just two months after he was released from custody in Maryland and while he remained on probation in Maryland *and* on pretrial supervision in Washington, D.C., Mr. Turner committed an armed burglary in Washington, D.C. and was arrested and charged in D.C. Superior Court Case No. 2024-CF3-012893. This case is currently in trial, but according to the Gerstein affidavit filed at the initiation of the case, surveillance footage shows Mr. Turner in the hallway of an apartment building holding a black weapon in his left hand. He then appeared to enter the complainant's apartment. According to the complainant, Mr. Turner entered the complainant's apartment waiving a gun and threatening to start shooting if the complainants didn't leave in five minutes. Mr. Turner has been detained pending trial since his arrest on this burglary.

## ARGUMENT

As an initial matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782

F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142 (e). "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) because the Defendant is charged with committing a firearms offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

The facts of the instant case and the Defendant's criminal history, when reviewed together under the § 3142(g) framework, demonstrate that there is no condition or combination of conditions that will assure the safety of the community if the Defendant were to be released.

I. **The Nature and Circumstances of this Offense Merit Detention.**

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The defendant is charged with a serious offense carrying significant

penalties. For violating 18 U.S.C. § 922(g), the defendant faces a maximum sentence of up to fifteen years' imprisonment pursuant to 18 U.S.C. § 924(a)(8). The Court should take the threat that the defendant poses seriously.

Courts have repeatedly held that possession of a firearm, when loaded as it was in this case or carried in a concealed manner, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when a defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

Indeed, courts in this District have warned against discounting the inherent danger associated with loaded firearms, even when the instant offense is possessory in nature. *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). Here, not only was this firearm loaded with a round

in the chamber, *see United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020), *aff'd* (Nov. 5, 2020) (finding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling,"), but it was loaded with 12 more rounds in the fully-loaded magazine.

Unlawful gun possession is so problematic because the number of violent crimes committed with guns in the District continues to rise: in the past three years (May 20, 2022 to May 20, 2025), violent crimes committed with a firearm went up by 1,138 compared to the previous three years.[1] Similarly, the homicide rate has remained high in recent years: as of May 22, 2025, there have been 59 homicides in 2025. In 2024, there were 187 homicides; in 2023, there were 274 homicides; in 2022, there were 203 homicides.[2]

As such, the nature and circumstances of this offense weighs heavily in favor of detention.

## II.     The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention.[3] Here, the Government's case against the defendant is strong.

Although the gun was recovered from Ms. Cuevas's purse, DNA testing results and the photo from Mr. Turner's phone—showing a urine sample with his name written on it next to a gun

---

[1] *See Crime Cards*, Metro. Police Dep't
https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited May 22, 2025).

[2] *See District Crime Data at a Glance: 2025 Year-to-Date Crime Comparison, Metro Police Dep't,*
http://mpdc.dc.gov/page/district-crime-data-glance (last visited May 22, 2025)

[3] This factor should be equally weighed. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

consistent with the firearm collected in this case—provide powerful evidence of his joint possession the firearm. In addition, the variety and amount of drugs that were either found on Mr. Turner's person or vehicle or which he attempted to discard after being stopped by police provide a motive for his possession of the firearm: he needed the firearm to facilitate the drug trade.

"If the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the defendant should be detained pretrial.

### III.     The Defendant's History and Characteristics Merit Detention.

The third factor, the defendant's history and characteristics, likewise favors detention. The defendant's record demonstrates both a pattern of possessing firearms and a pattern of violating release conditions.

If he is found guilty, the instant case will represent the defendant's third—and potentially fourth, depending on the outcome of the ongoing Superior Court jury trial—adult conviction for possessing or using a firearm. And the defendant's history, which includes a prior conviction for a shooting and a pending armed burglary, suggests that he possesses firearms with the intent to use them.

Mr. Turner's performance on probation and pretrial release over the course of the last year also makes clear that he is unwilling or unable to abide by release conditions ordered by the Court. At the time of the offense in this case, he was on probation for possessing a firearm in Maryland. He failed to follow even the most basic conditions of his probation: to report for supervision and to stay out of trouble. Shortly after returning to the community from a period of incarceration in

Maryland for violating the terms of his probation, and while he was still under supervision in both Maryland and D.C., he committed the armed burglary for which he is currently standing trial. The defendant has squandered every opportunity he has been given this last year to remain in the community. The Court should have little faith that, if afforded a similar opportunity here, he will behave any differently.

IV. **The Defendant Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by the Defendant's release, also weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). His criminal history—which reflects a pattern and practice of gun possession and gun violence—underlines this risk.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of

14

violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). Here the Defendant poses an obvious and articulable threat to the community and should be detained pretrial in this case.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain Mr. Turner pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Megan E. McFadden*
MEGAN E. MCFADDEN
Assistant United States Attorney
M.A. Bar Number 687959
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
Telephone: 202-252-7052
Email: megan.mcfadden@usdoj.gov
