**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 25-CR-00129 (SLS)** |
| **ASHAAD TURNER,** | |
| **Defendant.** | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The Defendant, Ashaad Turner, is before this Court after pleading guilty to: (1) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Count 1); and (2) Unlawful Possession With Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Marijuana, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D), after police found both drugs and a firearm in his possession.

For the reasons that follow, the Government respectfully requests that the Court sentence Defendant Turner to a term of 30 months' imprisonment on Counts 1 and 2.[1] The Government further requests that the Court impose three years of supervised release on each count, to be served concurrently to one another. This sentence is appropriate given the Defendant's prior history of

---

[1] Counts 1 and 2 are grouped for guideline calculation purposes because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the count(s). *See* USSG §3Dl.2(c). Pursuant to USSG §3Dl.3(a), in the case of counts grouped together pursuant to USSG §3Dl.2(a)-(c), the offense level applicable to a Group is the offense level for the most serious of the counts comprising the Group. In this case, the most serious count is Count 1. *See* PSR at 8, ¶ 27.

possessing unlawful firearms and, in one instance, using a firearm to shoot at someone else.

I.      **FACTUAL BACKGROUND**

The factual proffer to which the Defendant agreed as part of his December 18, 2025 guilty plea establishes the following uncontested facts:

On Sunday, August 25, 2024, Defendant Ashaad Turner unlawfully possessed a firearm and possessed controlled substances with the intent to distribute them near 908 Florida Avenue NW, Washington, D.C.

Specifically, on that day, Metropolitan Police Department (MPD) officers conducted a traffic stop on a BMW at a King gas station at 908 Florida Avenue, NW. Defendant Turner was in the driver's seat and defendant Katherine Cuevas was in the front passenger seat with a purse in her lap. Defendant Turner provided the MPD officers with a false name: Jaeqwon Turner. Defendant Turner was asked to step out of the BMW, which he did. While outside the vehicle, Defendant Turner walked to the passenger side of the car, where he removed two pink capsules and a bag containing 30 round blue pills from his clothing and dropped them on the ground. The 30 blue round pills weighed 4.85 grams and contained a detectable amount of heroin.

Defendant Turner was placed in handcuffs, and Defendant Cuevas was removed from the vehicle while wearing her purse. Defendants Turner and Cuevas were arrested. A search of Defendant Turner following his arrest revealed another pink capsule. All three pink capsules contained a detectable amount of cocaine base. Also recovered from Defendant Turner was a clear plastic bag containing 6.91 grams of cocaine base. Inside the vehicle, there was approximately 65.29 grams of marijuana, as well as 65 clear zips, 58 mylar bags, and 85 clear plastic baggies. Defendant Turner possessed these controlled substances and intended to distribute them.

Inside Defendant Cuevas' purse was a black, Sig Sauer P365 9mm pistol with serial

number 66B402602. The firearm was reported stolen from Saint Mary's County, Maryland on April 24, 2024. The firearm was loaded with one round in the chamber and twelve rounds in the magazine inserted into the weapon. The firearm appeared to be fully functional, had a barrel length of less than twelve inches, was designed to be fired by a single hand, and was designed to expel a projectile by the action of an explosion. No firearms or ammunition are manufactured within the District of Columbia and therefore, the recovered firearm and ammunition traveled in and affected interstate commerce.

Defendant Turner knew that the firearm was in Defendant Cuevas' purse and, on August 25, 2024, he intended to exercise dominion and control over the firearm. In other words, Defendant Turner was in joint constructive possession of the firearm with Defendant Cuevas.

On August 25, 2024, Defendant Turner had previously been convicted of a crime punishable by more than one year of imprisonment, and he knew that he had been previously convicted of a crime punishable by more than one year of imprisonment. Specifically, Defendant Turner was convicted in D.C. Superior Court, Case No. 2020 CF3 7496, of Assault with a Dangerous Weapon, and in Prince George's County Circuit Court, Case No. C-16-CR-24-92, of Illegal Possession of a Regulated Firearm. Both offenses are punishable by more than one year of imprisonment.

## II.    PROCEDURAL HISTORY

On May 1, 2025, a federal grand jury in the United States District Court for the District of Columbia returned a two-count Indictment charging Defendants Ashaad Turner and Katherine Cuevas with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(l) (Count 1) and Carrying a Pistol Without a License, in violation of 22 D.C.C.§ 4504(a)(l) (Count

2).

On November 10, 2025, the Government filed a three-count Superseding Information charging Defendants Turner and Cuevas with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(l) (Count 1); Unlawful Possession with Intent to Distribute a Mixture or Substance Containing a Detectable Amount of Marijuana, in violation of 21 U.S.C. §§ 841(a)(l) and (b)(l)(D) (Count 2); and Carrying a Pistol Without a License (Outside Home or Place of Business), in violation of 22 D.C. Code § 4504(a)(l) (Count 3).

On December 18, 2025, Defendant Turner pled guilty to Counts One and Two of the Superseding Information pursuant to a written plea agreement with the Government.[2]

## III.   LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007).  The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>     (A)  to reflect the seriousness of the offense, to

---

[2] Defendant Cuevas pled guilty on January 22, 2026, and will be sentenced on May 13, 2026.

promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
      (i) issued by the Sentencing Commission…; and
      (ii) that, . . . are in effect on the date the defendant is sentenced; …

(5) any pertinent policy statement –
   (A) issued by the Sentencing Commission…and
   (B) that,…is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

## IV.    ANALYSIS OF THE U.S. SENTENCING GUIDELINES

Although the U.S. Probation Office's (USPO) calculation of Defendant Turner's criminal history points differs from that contained within the parties' plea agreement,[3] there is no dispute concerning the Guidelines calculation and Guidelines range. The parties and Probation concur that the Defendant's total offense level is 17 and his criminal history category is III, resulting in a

---

[3] The parties agree the Defendant's conviction in Dkt. No. C-16-CR-24-92 warrants two criminal history points, and that a "conviction" in Dkt. No. CR190700B warrants one criminal history point. Probation assessed three criminal history points for the former conviction, and the latter was *nolle prossed*, warranting no points. *See* PSR at 23, ¶ 98.

Guidelines range of 30 to 37 months' imprisonment.

## V.    THE GOVERNMENT'S SENTENCING RECOMMENDATION

The crime at issue here merits 30 months of incarceration. In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the desire to avoid unwanted sentence disparities, § 3553(a)(6).

### A. Nature and Circumstances of the Offense

The nature and circumstances of this offense are serious and warrant a lengthy sentence of imprisonment.

As a threshold matter, the Defendant's possession of a loaded handgun was an inherently dangerous act that placed the community at risk. *See, e.g.*, United States v. Cole, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when a defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."). While this case does not involve the Defendant's use of the recovered firearm, people carry guns because they intend to use them.

In addition, although the Defendant has pled guilty to unlawful possession of a firearm, as made clear by his proffer of fact, his criminal conduct went far beyond that. Here, the Defendant not only pled guilty to possessing a stolen firearm, the firearm was loaded with one round in the chamber and 12 rounds in the magazine. *See* Figure 1, below.



**Figure 1: Sig Sauer P365 9mm pistol; one round in the chamber and 12 rounds in a 12-round capacity magazine.**

Moreover, the Defendant had 30 blue round pills that weighed 4.85 grams and contained a detectable amount of heroin, a clear plastic bag containing 6.91 grams of cocaine base, approximately 65.29 grams of marijuana (excluding packaging), as well as 65 clear zips, 58 mylar bags, and 85 clear plastic baggies. *See* Figures 2-4, below.



**Figure 2: Photo of cocaine-base collected from or discarded by Defendant Turner.**



**Figure 3: Photo of cocaine-base collected from Defendant Turner.**



**Figure 4: Photo of THC collected from Defendant Turner's vehicle.**

Defendant Turner possessed the narcotics depicted in Figures 2 through 4 with the intent to distribute them. The fact that he admitted to possessing the firearm while intending to distribute three different illicit narcotics – heroin, cocaine-base, and THC – is especially alarming. Because drug trafficking is unlawful, there is a heightened risk that an individual will use a gun to resolve a dispute or to defend his drug supply or earnings. Guns thus pose an even greater danger to the community when in the hands of those dealing drugs. *See, e.g.*, *Muscarello v. United States*, 524 U.S. 125, 132 (1998) (recognizing the "dangerous combination" of "drugs and guns") (quoting *Smith v. United States*, 508 U.S. 223, 240 (1993)).

While the Defendant's crime did not result in any direct violence against another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously.

9

### B. The History and Characteristics of the Defendant

Although Defendant Turner has accepted responsibility for his actions in this case, a 30-month sentence is appropriate given the Defendant's history of recidivism. He has repeatedly violated firearms laws, engaged in firearms-related violence, and flouted the terms of supervision while in the community.

*1. The Defendant Has Prior Convictions for Firearms Offenses and Violence*

What is notable about Defendant Turner's criminal history is how often he has been incarcerated for unlawful firearm possession. The instant conviction is the Defendant's third adult conviction for possessing or using a firearm. And the Defendant's history, which includes a prior conviction for a shooting, suggests that he possesses firearms with the intent to use them.

On December 23, 2020, the Defendant pled guilty in D.C. Superior Court Case No. 2020-CF3-007496 to Assault with a Dangerous Weapon (Firearm) and Carrying a Pistol Without a License. Per the factual proffer, on September 23, 2020, he approached the complainant and confronted him about an incident the previous day. *See* PSR at 9, ¶ 41. When the complainant denied his involvement in the incident, the defendant and another individual began kicking and punching the complainant. The complainant fled, Defendant Turner chased after him, pulled out a firearm, and shot at the complainant. Luckily all of Defendant Turner's shots missed. However, this was not the Defendant's only firearm case.

In December 2023, Defendant Turner was caught with another firearm in Prince George's County, Maryland, Maryland Case No. C-16-CR-24-000092, after he fled from police in his car. *See* PSR at 11, ¶ 42. After bailing from the car, police recovered a Glock 43 firearm loaded with six rounds of ammunition. Defendant Turner pled guilty to possessing the firearm in March 2024 and was sentenced to 5 years' incarceration, with 9 months to serve, and 5 years' probation.

10

In August 2024, less than six months after pleading guilty to unlawfully possessing a firearm, the Defendant was arrested for the conduct at issue in the instant case.

What Defendant Turner's criminal history shows is a documented disregard for others, a man who is violent and continually preys on others, and someone who cannot stop harming others unless he is incarcerated. A 30-month period of incarceration is not simply warranted as a form of punishment; it is necessary to protect the community.

2.   *The Defendant Has a Poor Record of Supervision and Compliance*

In addition to the Defendant's numerous firearm convictions, the Defendant has a long history of failing to comply with court supervision and staying out of legal trouble. Defendant Turner's performance on probation and pretrial release in 2024 makes clear that he is unwilling or unable to abide by release conditions ordered by the Court.

At the time of the offense in this case, Defendant Turner was on probation for possessing a firearm in Maryland. █████████████████████████████████

██████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

Given the Defendant's criminal history and his history on supervised release, the Court should have little faith that Defendant Turner will behave any differently. Thus, a 30-month period of incarceration is warranted in this case.

11

### C.  The Need for the Sentenced Imposed to Afford Adequate Deterrence

While thankfully no one was injured in the instant case, firearms combined with the illicit narcotics the Defendant possessed heightened the danger to the community. A significant term of incarceration is necessary to incapacitate the Defendant and protect the community, as he is someone who clearly has not learned from his past convictions and does not take the previous sentences that he has received seriously.

Therefore, a 30-month prison term is also necessary to deter the Defendant from continuing to unlawfully possess firearms and peddle drugs in the community.

### D.  The Desire to Avoid Unwanted Sentence Disparities

Finally, one of the goals of the U.S. Sentencing Guidelines is to avoid sentence disparities among similarly situated defendants. The Government's requested sentence is reasonable and is in line with the sentences imposed on similarly situated defendants.

According to data collected by the United States Sentencing Commission, during the last five fiscal years (FY2020-2024), there were 1,647 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 17 and a Criminal History Category of III. *See* PSR at 28, ¶ 125. For the 1,583 defendants (96%) who received a sentence of imprisonment, the average length of imprisonment imposed was 29 months and the median length of imprisonment imposed was 30 months. *Id*.

The Defendant's actions warrant a sentence that is in line with the sentences served by other similarly situated defendants. Sentencing the Defendant to less time creates a sentence disparity that the Guidelines seek to avoid.

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court sentence

12

Defendant Turner to a term of 30 months' imprisonment on Counts 1 and 2, to be followed by three years of supervised release. The Government requests that the sentences for both counts be run concurrently.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:     __/s/ *Jared English*_____
JARED ENGLISH
Assistant United States Attorney
D.C. Bar No. 1023926
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-465-0089
Email: Jared.English@usdoj.gov

13